1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

10  ELRAH GFELLER,                              )
                                               )        Case No. 2:14-cv-01940-JCM-VCF
11                   Plaintiff(s),             )
                                               )
12  vs.                                        )        ORDER
                                               )
13  DOYNE MEDICAL CLINIC, INC.,                )
                                               )
14                   Defendant(s).             )
    _____     )

15

16      Pending before the Court is an order for Defendant and Defendant's counsel, Nadin Cutter, to

17  show cause why they should not be sanctioned pursuant to Rule 16(f)[1] and Local Rule IA 4-1.  Docket

18  No. 32.  The Court held a show cause hearing on July 24.  Docket No. 37.[2]  The Court also ordered Ms.

19  Cutter to submit materials that she referenced at the hearing, Docket No. 39, which have now been filed,

20  Docket Nos. 41, 41-1.  Having reviewed the record and the arguments presented, and for the reasons

21  discussed more fully below, the Court hereby **SANCTIONS** Ms. Cutter in the amount of a $2,000 court

22  fine and Plaintiff's attorneys' fees.

23      The pending order to show cause was also directed to Defendant itself.  *See* Docket No. 32.  It

24  appears clear that the misconduct identified is limited to Ms. Cutter.  Accordingly, the order to show

25  cause is hereby **DISCHARGED** as it relates to Defendant.

26  _____

27      [1] Unless otherwise noted, references to "Rules" refer to the Federal Rules of Civil Procedure.

28      [2] All dates referenced occurred in 2015.

1    **I.    FACTUAL BACKGROUND**

2         A.    Previous Misconduct, Requirement that Counsel Educate Herself, and Warning[3]

3         On January 14, the undersigned issued an order scheduling an early neutral evaluation for April

4    9.  Docket No. 10.  That order also required the parties to submit an evaluation statement to the

5    undersigned's chambers no later than April 2.  *Id.* at 3.  Ms. Cutter failed to submit Defendant's

6    statement by that deadline.

7         On April 6, the Court issued a minute order requiring Ms. Cutter to submit Defendant's

8    evaluation statement to chambers no later than noon on April 7.  Docket No. 18.  Ms. Cutter again failed

9    to comply.  Instead, Ms. Cutter telephoned the undersigned's chambers to "inform" the Court that she

10   would not be submitting that statement by the deadline ordered.  *See* Docket No. 19.

11        On April 7 at 1:49 p.m., the Court issued yet another minute order requiring Ms. Cutter to submit

12   Defendant's evaluation statement to chambers, this time no later than 4:00 p.m. that day.  Docket No.

13   19.  Ms. Cutter subsequently argued that this second minute order was issued in error because the

14   evaluation statement had been properly delivered at 1:29 p.m. and was accepted by the Court.  Docket

15   No. 20 at 3.  The Court's staff then investigated Ms. Cutter's claim only to discover that she had

16   delivered the confidential statement to United States Magistrate Judge Cam Ferenbach's chambers rather

17   than to the undersigned's chambers.  *See* Docket No. 24 at 3.  In so doing, Ms. Cutter violated the Local

18   Rules and the order regarding delivery of the evaluation statements.  *See* Local Rule 16-6(f); *see also*

19   Docket No. 10 at 3.  This was particularly problematic because the early neutral evaluation procedures

20   are specifically designed so that the assigned district judge and magistrate judge (Judge Ferenbach in

21   this case) are not privy to the party's positions advanced during the early neutral evaluation process to

22   alleviate any potential concerns that later decisions will be affected by the disclosure of those positions.

23   *See, e.g.*, Docket No. 20 at 3.[4]

24   _____

25        [3] This section provides only an overview of Ms. Cutter's conduct during this period derived from

26   the order issued on April 9, which itself did not provide an exhaustive recounting of Ms. Cutter's
     misconduct.  *See* Docket No. 24 at 4 n.6.

27        [4] The Court ultimately continued the early neutral evaluation based on a motion to continue filed by

28   Ms. Cutter on the day before the early neutral evaluation was set to commence.  *See* Docket Nos. 20, 21.

1    In short, by this point in time, Ms. Cutter had failed to comply with three orders to deliver the

2    evaluation statement to the undersigned's chambers.  She had also violated at least Local Rule 7-6(a)

3    (prohibiting *ex parte* communications) and Local Rule 16-6(f) (requiring early neutral evaluation

4    statements to be delivered to the magistrate judge presiding over the early neutral evaluation).  In doing

5    so, Ms. Cutter interfered with the Court's ability to attend to more pressing matters and disrupted the

6    Court's calendar.

7        In light of the above, the Court undoubtedly had the discretion to impose monetary or other

8    sanctions on Ms. Cutter.  The Court did not do so.  Instead, the Court found that the circumstances

9    showed that "Ms. Cutter is not sufficiently prepared to practice law in this Court," and ordered her to

10   read the civil local rules and Special Order No. 109, and to participate in training available on the

11   Court's website.  Docket No. 24 at 4; *see also* Docket No. 25 (declaration of compliance).  To further

12   ensure that continued misconduct was avoided, the Court warned Ms. Cutter that such leniency would

13   not be repeated for future violations of orders and applicable procedural rules:

14           **The Court further advises Defendant and Ms. Cutter that it expects strict**
             **compliance with Court orders and applicable rules in the future, and that**
15           **the failure to comply may result in the imposition of significant sanctions.**
             *Cf. Garcia v. Geico Cas. Co.*, 2015 U.S. Dist. Lexis 2155, *8-10 (D. Nev. Jan.
16           6, 2015) (sanctioning attorneys $7,500 for repeating same misconduct after being
             ordered in previous case to read the local rules and Special Order No. 109).

17

18   Docket No. 24 at 4-5 (emphasis in original).

19       B.    Current Misconduct Before the Court

20       The Court trusted that providing Ms. Cutter the opportunity to better prepare herself to practice

21   in this Court, coupled with a stern warning that future misconduct might result in significant sanctions,

22   would prompt her to straighten out the ship.  That hope was misplaced.  Instead, Ms. Cutter has

23   continued down the same course of flaunting the undersigned's orders.  It is this more recent conduct

24   that is currently before the Court through the pending order to show cause.

25       The undersigned held the early neutral evaluation in this case on April 29, at which time the

26   parties reached a settlement.  *See* Docket No. 28.  At the ensuing hearing, the Court ordered the parties

27   to file dismissal papers by June 5, an order that was memorialized in writing in the minutes of

28   proceeding.  *See id.* ("IT IS FURTHER ORDERED that a Stipulation of Dismissal and Proposed Order

is due by <u>Friday, June 5, 2015</u>" (emphasis in original)).  This 37-day period to finalize a settlement agreement and file dismissal papers provided more than ample time for compliance.  Although it should be clear without separate instruction, the Court also expressly instructed that an extension should be sought in the event the parties were not able to comply with the deadline to file the stipulation of dismissal. *See* Hearing Rec. (4/29/2015) at 5:53-5:54 p.m.[5]  Hence, what was required of counsel could not have been clearer.

The parties failed to comply with the order to file the stipulation of dismissal by June 5.  Instead, on June 8, Plaintiff's counsel filed a status report indicating that Ms. Cutter was refusing to comply:

> Plaintiff has made multiple attempts, both by telephone and email communications to counsel for the Defendant seeking approval to use her electronic signature to timely file the stipulation.  However, despite multiple advance reminders and full notice of the Court's Order and deadline set forth therein, counsel for the Defendant has advised this undersigned she is withholding approval to file the stipulation until such time as she may file a motion to have this matter sealed.
>
> Plaintiff is unaware when such motion may or may not be filed; counsel for Defendant has stated her intent to file such a motion since on or before May 11, 2015, when the parties completed the settlement agreement.

Docket No. 29 at 1-2.  Ms. Cutter never sought to extend the June 5 deadline.  Instead, as represented by Plaintiff's counsel and as would be confirmed later by the Court, she made a conscious decision to disobey the order setting that deadline based on her desire to file (at some unspecified point in time) a motion to seal the case.  Hence, Ms. Cutter violated the order memorialized at Docket No. 28.

Receipt of Plaintiff's status report prompted the Court to issue a minute order requiring a response from Defendant:

> The Court hereby ORDERS Defendant to file a response to Plaintiff's status report no later than June 10, 2015. In lieu of filing that response, the parties can also file a stipulation for dismissal by June 10, 2015.  IT IS SO ORDERED.

Docket No. 30.  Once again, the Court's directive could not have been clearer; the Court ordered that one of two things had to be filed by June 10, either (1) a response from Defendant to Plaintiff's status

---

[5] Written transcripts of the hearings discussed herein are not available, so the Court refers to the audio recordings and cites to the particular time of the statements at issue.

report or (2) dismissal papers. Ms. Cutter filed neither. Instead, she filed a motion to seal this case. Docket No. 31. In doing so, Ms. Cutter violated the minute order at Docket No. 30.

Given that Ms. Cutter had violated two clear orders, the Court then issued the pending order to show cause why sanctions should not be imposed. Docket No. 32. That order was issued on June 12 and is the order to show cause currently before the Court. On June 12, following issuance of that order to show cause, Ms. Cutter filed a one-paragraph long "status report" indicating in its entirety:

> COMES NOW, Nadin Cutter, Esq. of Cutter Law Firm, Chtd. and hereby requests that this Court adjudicate the Motion to Seal already filed on June 10, 2015 and then, once decided, Defendants are happy to sign the Stipulation and Order to Dismiss. Defendant respectfully is willing to sign the dismissal document; however, would like the decision on the pending Motion before agreeing to dismiss, and thereby, effectively closing this matter. Defendant feels the case cannot be closed until the Motion filed on June 10th is decided; however, Defendant has no problem with dismissing this matter once the Motion is decided.

Docket No. 33.[6]

Four days later, on June 16, Judge Ferenbach summarily denied Defendant's motion to seal. Docket No. 34. Judge Ferenbach noted that the motion failed to address any governing case law or standards, and the motion failed to satisfy the applicable standards. *See id.* Despite entry of that order and despite her prior representations to the contrary, *see* Docket No. 33, Ms. Cutter *still* did not file dismissal paperwork.[7] After more than three additional weeks had passed, on July 9, the Court issued an order setting a show cause hearing for July 24. *See* Docket No. 35.[8]

_____

[6] The purpose of this "status report" is unclear. At the show cause hearing, Ms. Cutter vehemently denied that the status report was filed in response to the order to show cause. *See* Hearing Rec. (7/24/2015) at 3:38 p.m (responding to the Court's statement that the status report appeared to be in response to the order to show cause, Ms. Cutter responded: "That's incorrect your honor . . . We filed the status report in response to the minute order that says please file a status report by June 10"). When the consequences of that representation were made plain (*i.e.*, that she failed to respond to the order to show cause), Ms. Cutter changed her tune. *See* Hearing Rec. (7/24/2015) at 3:38 p.m. (asserting that the status report responds to the order to show cause). Regardless of the intended purpose, the Court has considered the contents of the status report in formulating this order.

[7] Nor did Ms. Cutter file a renewed motion to seal addressing the governing case law and standards.

[8] This order was signed on July 8, but was issued at 8:52 a.m. on July 9. *See* Docket No. 35, Notice of Electronic Filing.

Ms. Cutter did not file any documents between the issuance of the order setting that show cause hearing on July 9 and the hearing itself on July 24.[9]  At the show cause hearing, Ms. Cutter made a series of convoluted, confused, and misleading representations.  As an initial matter, Ms. Cutter insisted that she had complied with the minute order at Docket No. 30 because she filed a response to the status report.  Hearing Rec. (7/24/2015) at 3:36 - 3:37 p.m.  That position is obviously belied by the docket.  Defendant was ordered to file a response to the status report no later than June 10, and Ms. Cutter did not do so until after the order to show cause was issued on June 12.  *See* Docket Nos. 30, 32, 33.  As she reluctantly acknowledged, Ms. Cutter's contentions that she had complied with the minute order at Docket No. 30 are simply false, *see* Hearing Rec. (7/24/2015) at 3:37 p.m., 3:46 p.m., and there has been no justification of any kind advanced for her failure to comply.

Ms. Cutter's arguments regarding her non-compliance with the order setting the June 5 deadline to file the stipulation of dismissal fare no better.  As noted above, Ms. Cutter's reason for choosing to disobey that order is that she believed her motion to seal needed to be filed and decided prior to dismissal.  *See, e.g.*, Docket No. 33.  Despite issuance of the order to show cause and the show cause hearing, Ms. Cutter has not submitted any legal authority supporting that contention.  More significantly, even if Ms. Cutter were correct on that proposition, she has not explained why she could not have promptly filed a motion to seal so that it could be ruled upon before June 5.  Ms. Cutter has affirmatively represented that she had been contemplating that motion to seal since at least the date of the early neutral evaluation on April 29.  *See* Hearing Rec. (7/24/2015) at 3:40 - 3:42 p.m.  Ms. Cutter offers no explanation–reasonable or otherwise–why she could not have prepared and filed that motion to seal during the 37-day period between the early neutral evaluation and the June 5 deadline for filing dismissal papers.[10]  Had Ms. Cutter believed that court action was required prior to dismissal, then she should have

_____

[9] On the other hand, Plaintiff's counsel filed a notice of non-availability in light of a medical procedure that would require her to be unavailable from July 23 to August 7.  *See* Docket No. 36.  Consistent with her notice, Plaintiff's counsel did not appear at the show cause hearing.  *See* Docket No. 37.

[10] Ms. Cutter's failure to promptly file the motion to seal is especially puzzling given that the motion as later filed consists of roughly three pages and is devoid of both applicable case law and meaningful analysis.  *See* Docket No. 31.

1   taken appropriate steps to facilitate that action well before June 5.  Instead, she waited until June 10 to
2   file the motion to seal, 42 days after the early neutral evaluation took place and nearly a week after the
3   deadline to file dismissal papers.   *See* Docket No. 31.  Lastly, if Ms. Cutter thought she could not
4   reasonably comply with the June 5 deadline, her recourse was to seek an extension of that deadline
5   explaining her position rather than simply ignoring the order.

6           In short, Ms. Cutter made a conscious decision to disobey the order to submit a stipulation of
7   dismissal by June 5.  Ms. Cutter fails to provide any authority supporting her belief that the motion to
8   seal needed to be filed and decided prior to dismissal, she fails to explain why the time period before
9   the June 5 deadline was not sufficient to do so, and she fails to justify why she decided to forego
10  requesting an extension and instead chose to simply ignore the court order.  Just as when she telephoned
11  chambers to "inform" the Court that she would not be complying with Docket No. 19, Ms. Cutter
12  remains under the false impression that it is within her province to decide the schedule on which
13  litigation will proceed despite court orders to the contrary.

14          If that initial non-compliance were not enough, Ms. Cutter's disobedience was aggravated when
15  she failed to promptly stipulate to dismiss the case even after Judge Ferenbach denied her motion to seal
16  on June 16.  Ms. Cutter repeatedly suggested at the show cause hearing that it was Plaintiff's
17  counsel–absent from the hearing for medical reasons–who was to blame for the additional delay.  Ms.
18  Cutter attempted to lead the Court to believe that she made diligent efforts to obtain dismissal upon
19  receiving Judge Ferenbach's denial of the motion to seal.  *See, e.g.*, Hearing Rec. (7/24/2015) at 3:49
20  p.m. ("We've always agreed to dismiss it, though, your honor. *As soon as the motion to seal was ruled*
21  *upon* we still agreed to dismiss it" (emphasis added)).  In particular, when pressed to explain why she
22  waited until July 6 to email Plaintiff's counsel regarding dismissal, Ms. Cutter insisted that she had
23  earlier contacted her by telephone.  *See* Hearing Rec. (7/24/2015) at 3:51 p.m. ("Court: You contacted
24  her on July 6.  Ms. Cutter: We contacted her before that too by phone"); *see also* Hearing Rec.
25  (7/24/2015) at 3:50 p.m. (responding to a question as to why she did not attempt to stipulate to dismiss
26  the case between the issuance of Judge Ferenbach's order on June 16 and the email she referenced on
27  July 6, Ms. Cutter responded:  "We also called to speak to opposing counsel about dismissing the case
28  out after the motion was denied because my client was fine with dismissing the case . . .").  Ms. Cutter

1   could not pin-point the date on which she telephoned Plaintiff's counsel between June 16 and July 6,

2   but she asserted that she knew her statement was "accurate" and the exact date could be established by

3   reviewing her telephone log.  *See* Hearing Rec. (7/24/2105) at 3:50 p.m.

4          The Court having now reviewed that telephone log, it is clear that Ms. Cutter's insistence that

5   she called Plaintiff's counsel between June 16 and July 6 is patently false:  there were no telephone calls

6   between Ms. Cutter and Plaintiff's counsel from June 3 until July 8.  *See* Docket No. 41 at 3.  Indeed,

7   the record reflects no communications of any kind between counsel following Judge Ferenbach's ruling

8   until Plaintiff sent the referenced email on July 6.  *See, e.g.*, Docket No. 41 at 3, 5, 32.  In short, despite

9   her representations that she was ready to stipulate to dismissal as soon as Judge Ferenbach ruled on the

10  motion to seal and despite her representations that she contacted Plaintiff's counsel during the time

11  period immediately following that ruling, the record reflects that Ms. Cutter did not contact Plaintiff's

12  counsel to dismiss the case for roughly three weeks.  Ms. Cutter's suggestion that she worked diligently

13  to dismiss the case following Judge Ferenbach's denial of her motion to seal is false.

14         Ms. Cutter also insisted repeatedly that her attempts to have the case dismissed were not fruitful

15  because Plaintiff's counsel would not consent to dismissal given the pendency of the show cause

16  hearing:

17             What we did in between the . . . July 8 order and the order to show cause from the 12th
              [of June] is that we sent emails to the Plaintiff that said: 'Our side approves dismissal,
18            do you want me to submit it?  Do you need me to file it since it did not have my
              signature?  Let me know.  I'll file it.  If I don't hear from you, I'll file it.  I'm calling you
19            as well.'  *And then she said: 'Because there is the hearing pending, that she didn't think
              she could do that.'*  So I'm kind of stuck between a rock and a hard place.
20

21  Hearing Rec. (7/24/2015) at 3:39 p.m. (emphasis added); *see also* Hearing Rec. (7/24/2015) at 3:49 p.m.

22  (Ms. Cutter asserting that she didn't file the dismissal paperwork "because the hearing . . .  The email

23  that I sent was on July 6 . . . 'our side approves the dismissal.  Do you want me to submit it?'  I have

24  another email July 7 . . . 'do you need me to file it . . . since it did not have my signature previously?

25  Let me know and I'll file it' . . .  And then her point was because there's a hearing . . . there was some

26  email . . . because the hearing was coming up that she didn't think we could just do it like that").  Quite

27  simply, Ms. Cutter insisted that "we weren't allowed to do it with opposing counsel.  We weren't

28  allowed."  Hearing Rec. (7/24/2015) at 3:50-3:51 p.m.

Once again the Court has reviewed the records submitted, and they do not support Ms. Cutter's representations to the Court. While Ms. Cutter referenced "some email" that would support her claims, Hearing Rec. (7/24/2015) at 3:49 p.m., no such email exists. Instead, the emails she has submitted show that Plaintiff's counsel stated that the draft stipulation of dismissal needed to be revised to reflect the circumstances leading to the failure to comply with the deadline set by the Court because the late-filed stipulation would require a *de facto* extension of that deadline. *See* Docket No. 41 at 40, 51 ("Respectfully, please review the local rules of practice (including LR 6-1 and LR 26-4) for the requirements of presenting stipulations which are filed past a court-ordered deadline"). Plaintiff's counsel further indicated that a modification to the stipulation of dismissal may be necessary to reflect that she was not waiving her client's right to attorneys' fees (or other relief) in conjunction with the order to show cause. *See* Docket No. 41 at 37. Plaintiff's counsel invited Ms. Cutter (as the attorney who caused the situation requiring additional work) to draft a narrative addressing those concerns so that it could be added to the stipulation of dismissal. Docket No. 41 at 40. It appears Ms. Cutter simply refused to do so. *See* Docket No. 41 at 43, 47. Ms. Cutter's representations that it was Plaintiff's counsel holding up the dismissal of this case based on the pending show cause hearing lack any support in the record: there is no email from Plaintiff's counsel responding to Ms. Cutter's emails of July 6 and July 7 refusing to have the case dismissed. Moreover, the contention that Plaintiff's counsel refused to dismiss the case in light of the pending show cause hearing is non-sensical because the show cause hearing had not at that time been set, and there is no email or telephone communication of any kind between the issuance of the order setting the show cause hearing on July 9 and the show cause hearing on July 24. *See, e.g.*, Docket No. 41 at 3, 5. Ms. Cutter's contention that Plaintiff's counsel refused to stipulate to dismissing the case in light of the show cause hearing (or for any other reason) is wholly unsupported by the record.

In short, the Court provided five weeks following the early neutral evaluation for the parties to file a stipulation of dismissal. Docket No. 28. Plaintiff's counsel stood ready to comply and even urged Ms. Cutter to also comply. *See* Docket No. 29; Docket No. 41 at 14 (June 4 email from Plaintiff's counsel indicating that she wanted to file the stipulation of dismissal by the end of the day and that Ms. Cutter should "please keep the court's order [setting the June 5 deadline] in mind"). Ms. Cutter

apparently sought to have an unfiled motion to seal the case decided prior to dismissal, but failed to diligently file that motion and failed to seek an extension of the deadline to file the stipulation of dismissal.  Instead, she sat on her hands on the motion to seal and chose to simply ignore the court-ordered deadline.  Making matters worse, she did not act promptly even after her ill-fated motion to seal was denied.  She waited another three weeks to even contact opposing counsel and then refused to modify the stipulation for dismissal to reflect the changed procedural posture of the case.  <u>By the date of the show cause hearing, 87 days had passed since the early neutral evaluation was conducted, 50 days had passed since the deadline expired to file dismissal paperwork, 39 days had passed since the motion to seal was denied, and yet the dismissal papers still had not been filed.</u>  This shortcoming is in addition to Ms. Cutter failing to comply with the Court's order that she respond to Plaintiff's status report by June 10.  *See* Docket Nos. 30, 32, 33.  Ms. Cutter violated two clear Court orders with no reasonable justification of any kind.  Moreover, she did so after being given a clear warning that she was expected to strictly comply with court orders.[11]

## II.    MAGISTRATE JUDGE AUTHORITY

Before turning to the substance of the pending order to show cause, the Court first evaluates its authority to decide the matter.  The authority of the undersigned magistrate judge is derived from 28 U.S.C. § 636, which generally provides magistrate judges with the authority to "hear and determine" non-dispositive matters.  *See* 28 U.S.C. § 636(b)(1)(A); *see also S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1259 (9th Cir. 2013).  By contrast, dispositive matters are sometimes referred to magistrate judges, but in those circumstances a magistrate judge submits a recommendation to the assigned district judge that is subject to the district judge's *de novo* review.  *See* 28 U.S.C. § 636(b)(1)(B); *see also*

_____

[11] The sanctions imposed herein are based only on the two violations of the orders at Docket Nos. 28 and 30. As it has in the past, the Court notes that it appears that its recitation of Ms. Cutter's misconduct is underinclusive. For example, it appears that Ms. Cutter may have violated the order to show cause itself by failing to respond to it in writing. *See, supra*, at 5 n.6.  It also appears that Ms. Cutter may have engaged in unprofessional and harassing conduct directed to opposing counsel and her staff despite a previous warning from the Court regarding similar misconduct. *See* Docket No. 41-1 at 2, 27, 43, 62 (referencing, *inter alia*, unprofessional conduct directed to Plaintiff's counsel's assistant and telephone calls to Plaintiff's counsel at her house while she was trying to recover from major surgery); *see also* Docket No. 24 at 2 n.4 (warning Ms. Cutter that she is required to interact with others in a professional and civil manner).

1   *CMKM Diamonds*, 729 F.3d at 1259-60.  Section 636 specifically enumerates eight different types of
2   matters to be treated as "dispositive."  *See* 28 U.S.C. § 636(b)(1)(A)-(B).  When a matter falls outside
3   of those expressly enumerated as dispositive, courts look to the nature and effect of the issued ruling to
4   determine whether the underlying matter should be considered dispositive or nondispositive.  *See, e.g.*,
5   *Maisonville v. F2 America, Inc.*, 902 F.2d 746, 748 (9th Cir. 1990) (finding motion for Rule 11 sanctions
6   to be non-dispositive because it would not "have an effect similar to those motions considered
7   dispositive").  In light of the nature of the sanctions at issue, the matter before the Court is non-
8   dispositive in nature.
9        The Court also notes that the undersigned is not the magistrate judge assigned to this case for
10  general purposes.  The Local Rules of the District establish a mechanism for magistrate judges to hold
11  early neutral evaluations in certain types of cases.  *See, e.g.*, Local Rule 16-6.  To alleviate any potential
12  concerns that the positions taken during that early neutral evaluation process might in some way impact
13  the case in the event settlement is not reached, the Local Rules provide that the assigned magistrate
14  judge does not preside over the early neutral evaluation and, instead, a different magistrate judge does
15  so.  *See, e.g.*, *Gfeller v. Doyne Med. Clinic, Inc.*, 2015 U.S. Dist. Lexis 46542, *5 (D. Nev. Apr. 8,
16  2015) ("the program is specifically designed such that the assigned district judge and assigned magistrate
17  judge are not privy to the parties' positions advocated during the early neutral evaluation process"
18  (emphasis omitted)).  It is the evaluating magistrate judge who is vested with the authority to issue
19  orders related to the early neutral evaluation process.  *See, e.g.*, Local Rule 16-6(c) (evaluating
20  magistrate judge has the final authority regarding requests for exemption from early neutral evaluation);
21  Local Rule 16-6(e) (evaluating magistrate judge has the discretion to excuse certain persons from
22  participating in the early neutral evaluation).  As a corollary, the evaluating magistrate judge is also
23  tasked with enforcing her orders arising out of the early neutral evaluation process.  *See, e.g.*, *Henderson
24  v. Bonaventura*, 2014 WL 293297, *1 n.1 (D. Nev. Jan. 24, 2014) (citing *Weir v. Forman Auto. Group*,
25  2013 WL 756353 (D. Nev. Feb. 26, 2013)).
26       In short, the undersigned had the authority to issue the orders discussed herein and has the
27  authority to impose the below sanctions for non-compliance therewith.
28

1

## III.    STANDARDS AND ANALYSIS

2      Orders are not suggestions or recommendations, they are directives with which compliance is

3 mandatory.  *See, e.g.*, *Chapman v. Pacific Tel. & Tel. Co.*, 613 F.2d 193, 197 (9th Cir. 1979); *see also*

4 *Weddell v. Stewart*, 261 P.3d 1080, 1085 & n.9 (Nev. 2011).  There are several sources of legal authority

5 by which federal courts enforce their orders.  Most pertinent here, Rule 16(f) requires compliance with

6 any "scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(C).  The Local Rules in this District

7 reinforce Rule 16(f) and expand its scope by requiring compliance "with any order of this Court."  Local

8 Rule IA 4-1(d).  The fact that an order is made orally from the bench does not alter an attorney's duty

9 to follow it.  *Cf. Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011).  Similarly, a "minute

10 order" falls within the definition of "order" for purposes of Rule 16(f) and Local Rule IA 4-1(d).  *See,*

11 *e.g.*, *Williams v. Johnson*, 278 F.R.D. 1, 7 n.7 (D.D.C. 2011) (imposing sanction under Rule 16(f) for

12 failing to comply with minute order); *see also Trustees of Operating Eng'rs Pension Trust v. Maui One*

13 *Excavating, Inc.*, 2013 WL 1908328, *2-3 (D. Nev. May 7, 2013) (same).

14      Rule 16(f) is "broadly remedial and its purpose is to encourage forceful judicial management."

15 *Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986) (per curiam).[12]  Rule 16(f) applies

16 regardless of whether the non-compliance with the court order was intentional, *see, e.g.*, *Lucas Auto.*

17 *Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 769 (9th Cir. 2001), and regardless of whether

18 the non-compliance was in bad faith, *see, e.g.*, *Martin Family Trust v. Heco/Nostalgia Enters. Co.*, 186

19 F.R.D. 601, 604 (E.D. Cal. 1999).

20      Courts do not invoke Rule 16(f) to enforce their orders for sport.  Violations of orders setting

21 deadlines "involve a matter most critical to the court itself: management of its docket and the avoidance

22 of unnecessary delays in the administration of its cases."  *Martin Family Trust*, 186 F.R.D. at 603

23 (quoting *Matter of Sanction of Baker*, 774 F.2d 1440, 1441 (10th Cir. 1984) (en banc) (internal

24 quotations omitted)).  "Part of the purpose of the sanctioning power–the power at issue here–is to control

25 litigation and preserve the integrity of the judicial process."  *Nick v. Morgan's Foods, Inc.*, 270 F.3d 590,

26

27      [12] The Court herein focuses its attention on Rule 16(f), but sanctions are being imposed on Ms. Cutter
28 pursuant to both Rule 16(f) and Local Rule IA 4-1(d).

12

594 (8th Cir. 2001).  Each judge has an independent responsibility to enforce the directives she has laid

down for the case:

> Rules are rules–and the parties must play by them.  In the final analysis, the judicial process depends heavily on the judge's credibility.  To ensure such credibility, a [magistrate] judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines.  If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly escape the foreseeable consequences of noncompliance.

*Legault v. Zambarano*, 105 F.3d 24, 28-29 (1st Cir. 1997) (citation omitted); *see also Rice v. Barnes*,

201 F.R.D. 549, 551 (M.D. Ala. 2001) ("The court fully understands the pressures of practicing law;

however, the court cannot allow attorneys to flout deadlines and escape the foreseeable consequences

of doing so").  A court order setting deadlines "is not a frivolous piece of paper, idly entered, which can

be cavalierly disregarded by counsel without peril . . . .  Disregard of the order would undermine the

court's ability to control its docket . . . and reward the indolent and the cavalier." *Johnson v. Mammoth*

*Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (internal quotations and citations omitted).

When a court determines that Rule 16(f) has been violated, it has broad discretion in fashioning

an appropriate sanction.  *See, e.g.*, *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1397 (9th Cir.

1993); *see also* Local Rule IA 4-1 (the Court may impose "any and all appropriate sanctions on an

attorney" who violates any order without just cause).  Violations of orders are "neither technical nor

trivial," *Martin Family Trust*, 186 F.R.D. at 603, and can have severe ramifications.  Rule 16(f) itself

provides that courts may issue "any just orders," including those authorized by Rule 37(b)(2)(A)(ii)-(vii),

which include the initiation of contempt proceedings and entry of case-dispositive sanctions.  *See* Fed.

R. Civ. P. 16(f)(1); *see also Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130-33 (9th Cir. 1987)

(affirming dismissal sanction).  Rule 16(f) also authorizes the payment of the attorneys' fees and costs

incurred as a result of the non-compliance with the court order.  *See* Fed. R. Civ. P. 16(f)(2).  In addition,

while not expressly enumerated, the imposition of court fines is within the scope of the "just orders"

permitted by Rule 16(f).  *See, e.g., Nick*, 270 F.3d at 595-96.  In determining the appropriate sanction,

a primary objective is to deter similar misconduct.  *See, e.g.*, *Martin Family Trust*, 186 F.R.D. at 604.

As a corollary, when an attorney fails to alter her course of conduct despite previous orders admonishing

or sanctioning her, courts impose progressively harsher sanctions in an attempt to obtain the deterrent

1    effect sought.  *See, e.g.*, *Garcia v. Geico Cas. Co.*, 2015 U.S. Dist. Lexis 2155, *8-10 (D. Nev. Jan. 6,

2    2015) (multiplying by five previous sanctions imposed in another case, where attorneys repeated same

3    misconduct).   The Court also considers, *inter alia*, the resources wasted by the opposing party.  *See,*

4    *e.g.*, Fed. R. Civ. P. 16(f)(2).[13]

5         In this case, Ms. Cutter has exhibited habitual non-compliance with clear orders.  She has

6    continued this pattern even after being expressly cautioned that the Court expects strict compliance with

7    its orders and that non-compliance could lead to the imposition of significant sanctions.  Docket No. 24

8    at 4-5.  The latest in this nearly unbroken string of non-compliance involves Ms. Cutter refusing to file

9    a stipulation of dismissal by the deadline ordered by the Court and failing to comply with the order to

10   submit a response to Plaintiff's status report by the deadline ordered by the Court.  The orders at issue

11   are crystal clear: (1) Ms. Cutter was ordered to file a stipulation of dismissal by June 5 and (2) Ms.

12   Cutter was ordered to respond to Plaintiff's status report by June 10 unless the stipulation of dismissal

13   was filed by that date.  She chose not to comply with either order.  Ms. Cutter's cavalier attitude toward

14   court orders is emphasized by the facts before the Court; namely, she claimed that the necessity of filing

15   a motion to seal and the pendency of that motion prevented her from complying with the order to

16   stipulate to dismissal, but she failed to diligently submit dismissal papers even after that motion to seal

17   was denied and this purported obstacle to dismissal was removed.  By the date of the show cause

18   hearing, 39 days had passed since Judge Ferenbach denied the motion to seal and still a stipulation of

19   dismissal had not been filed.  Of course, attorneys are not free to simply disobey orders in the first place

20   even if they believe there is good reason to do so.  Had Ms. Cutter believed she needed to file a motion

21   to seal and have it ruled upon before stipulating to dismissal, she should have promptly filed that motion

22   to seal and requested an extension to the deadline to file the stipulation of dismissal.  Instead, she sat on

23   her hands in filing a motion to seal, and consciously chose to ignore the ordered deadline to file

24   _____

25        [13] The fact that a case has been dismissed does not impact a court's ability to rule on an earlier-issued

26   order to show cause.  "It is well established that a federal court may consider collateral issues after an action
     is no longer pending."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990).  Even after judgment

27   is entered, courts retain jurisdiction to impose sanctions for previous misconduct in the case pursuant to
     Rule16(f) and Local Rule IA 4-1. *See, e.g.*, *Maui One Excavating*, 2013 WL 1908328, at *2 (citing *United*

28   *Energy Owners Comm. v. U.S. Energy Mgmt. Sys., Inc.*, 837 F.2d 356, 358 (9th Cir. 1988)).

1  dismissal paperwork.  Ms. Cutter does not get to pick which orders to obey: "Calendars are simply too

2  crowded for parties to treat scheduling orders as optional and to submit required court filings at their

3  own convenience." *Martin Family Trust*, 186 F.R.D. at 603 (internal quotations and citation omitted).

4      The recent misconduct of Ms. Cutter merits the imposition of sanctions.  In light of Ms. Cutter's

5  failure to heed the Court's previous order sternly warning her to straighten out the ship by strictly

6  complying with court orders, the delay caused by her non-compliance, and the wasted judicial resources

7  caused by her non-compliance, the Court finds that a court fine of $2,000 is appropriate. The Court

8  believes this fine does not fully reflect the effect of Ms. Cutter's misconduct on either the integrity of

9  the Court's docket or the sanctity of Rule 16 and Local Rule IA 4-1.  Nonetheless, in this instance, the

10  Court believes the sanction is sufficient to deter similar misconduct.

11      In addition, it is clear that Ms. Cutter's misconduct has resulted in the additional and unnecessary

12  expenditure of time by Plaintiff's counsel, who stood ready to comply with the order to file the

13  stipulation of dismissal by the June 5 deadline and urged Ms. Cutter to do the same. *See* Docket No.

14  29; *see also* Docket No. 41 at 9, 14.  The additional time and effort for Plaintiff's counsel to prepare and

15  file the status report explaining that Ms. Cutter refused to comply stemmed directly from Ms. Cutter's

16  misconduct, and Ms. Cutter must pay the reasonable attorneys' fees for that work.[14]

17  **IV.    CONCLUSION**

18      For the reasons discussed more fully above, the Court hereby **SANCTIONS** Ms. Cutter in the

19  amount of $2,000 in a court fine and Plaintiff's attorneys' fees as outlined above.  This sanction is

20  imposed pursuant to both Rule 16(f) and Local Rule IA 4-1(d).  This sanction is to be paid personally

21

22      [14] The Court previously advised Ms. Cutter that attorneys availing themselves of the privilege of
practicing law in this Court are expected to understand its basic procedures and the requirements for

23  attorneys. *See* Docket No. 24 at 1 ("We expect an attorney practicing law in federal court to become familiar
with and follow rules applicable to practice in this court" (quoting *Dela Rosa v. Scottsdale Memorial Health*

24  *Sys., Inc.*, 136 F.3d 1241, 1244 (9th Cir. 1998)).  To that end, the Court previously required Ms. Cutter to

25  read in their entirety the local civil rules and Special Order No. 109, as well as to complete CM/ECF
training.  *See* Docket No. 24 at 4.  The Court advised Ms. Cutter that she was not prepared at that time to

26  practice law in this Court and urged her to better prepare herself to avoid similar future incidents. *See id.*

27  at 4-5.  Unfortunately, Ms. Cutter remains unprepared to practice law in this Court.  To that end, the
undersigned is issuing concurrently herewith an order referring her to the Nevada State Bar and to this Court

28  for potential disciplinary proceedings.

by Ms. Cutter and shall not be passed on in any way to her client.  Payment of the court fine shall be made to the "Clerk, U.S. District Court" no later than September 17, 2015.  Ms. Cutter is also ordered to file a proof of payment on the docket by that date.  Ms. Cutter shall promptly meet-and-confer with Plaintiff's counsel regarding the amount of reasonable attorneys' fees to be paid to Plaintiff's counsel for preparing and filing the status report at Docket No. 29.  To the extent they are not able to agree on the amount of those fees, no later than September 17, 2015, Plaintiff's counsel may file appropriate paper work documenting her time spent and hourly rate.  Ms. Cutter may file a response within seven days of that filing if she so chooses.

IT IS SO ORDERED.

DATED: September 3, 2015

_____
NANCY J. KOPPE
United States Magistrate Judge